IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| STEPHEN RAY WALLINGSFORD and SHARON M. WALLINGSFORD, <br><br>*Plaintiffs*, <br><br>v. <br><br>CHASE BANK, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO CHASE HOME FINANCE, LLC, <br><br>*Defendant*. | § § § § § § § § § § § § § § § Civil Action No.  SA-12-CV-341-XR |

**ORDER**

On this day the Court considered Defendant's motion to dismiss (Doc. No. 3). For the following reasons, the Court GRANTS the motion.

**I.**

**A. Factual Background[1]**

Plaintiffs Stephen Ray Wallingsford and Sharon M. Wallingsford ("Plaintiffs") bring this action to enjoin Defendant JPMorgan Chase Bank, National Association, Successor by Merger to Chase Home Finance, LLC ("Defendant")[2] from foreclosing on their property.

Plaintiffs are occupants and record title holders of real property located at 13738 Castle Grove Drive, San Antonio, Texas 78231. Plaintiffs executed a deed of trust and promissory note to acquire the property on November 14, 2007. The original lender was Hometrust Mortgage

---

[1] The following factual background summary is predicated on facts alleged in Plaintiffs' original state court petition.
[2] Defendant was incorrectly sued as "Chase Bank, National Association, Successor by Merger to Chase Home Finance, LLC." *See* Mot. Dismiss at 1.

Company and the beneficiary of the security instrument was Mortgage Electronic Registration Systems, Inc. ("MERS"). An assignment was executed on November 7, 2011 from MERS to Defendant. At some point, although Plaintiffs do not allege when, Defendant accelerated the debt and threatened to foreclose on the property.

Plaintiffs argue that Defendant does not have standing to foreclose because it is not acting on behalf of the holder of Plaintiffs' note, because the assignment was void, because the deed of trust has become a nullity, and because the note has been fully discharged.

### B. Procedural Background

Plaintiffs filed their Original Petition, Motion for Temporary Restraining Order and Application for Temporary Injunction in the 73rd Judicial District Court of Bexar County, Texas, on April 2, 2012. In their petition, Plaintiffs alleged causes of action for violation of the Texas Business and Commerce Code, violation of the Texas Civil Practice and Remedies Code, violation of the Texas Finance Code, common law fraud, and quiet title. Plaintiffs also seek declaratory and injunctive relief and request an order for an accounting.

Defendant removed the action to this Court on April 3, 2012, based on diversity jurisdiction. Shortly after removing the case Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant argues that Plaintiffs' petition fails to state a claim upon which relief can be granted because Plaintiffs lack standing to challenge the assignment and because all of Plaintiffs' claims are premised on legal arguments that fail as a matter of law. Plaintiffs filed a response to Defendant's motion to dismiss and Defendant filed a reply.

## II.

**A. Legal Standard for Deciding a Motion to Dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While detailed factual allegations are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. However, a complaint can survive a motion to dismiss even if actual proof of the facts alleged is "improbable." *Id.* at 556. Although the court must take all of the factual allegations in the complaint as true, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

**B. Documents That May Be Considered**

The Supreme Court has held that in deciding a motion to dismiss, a court may consider documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The court may also consider any documents attached to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *see also Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010)

(quoting *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (holding that while the court generally must not go outside the pleadings, "the court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'"). In attaching documents to a motion to dismiss that are referred to in the plaintiff's complaint and are central to her claim, "the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000). Whether the plaintiff has objected to the court's consideration of documents external to the complaint may be a factor that can be taken into account in determining whether to consider the documents. *Scanlan*, 343 F.3d at 536 (citing *Collins*, 224 F.3d at 498-99) ("The fact that the plaintiffs did not object to, or appeal, the district court's consideration of [documents attached to a motion to dismiss] was central to [the Fifth Circuit's] approval of that practice."). The district court may also take judicial notice of matters of public record. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *see also Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.").

In this case, Defendant attached several documents to its motion to dismiss, including a copy of the note, the deed of trust, and the assignment document. All three documents are central to Plaintiffs' claims and are referenced throughout the original petition. The Court also takes judicial notice of the deed of trust and the assignment document because they have been recorded and are therefore matters of public record.

## III.

### A. Plaintiffs' Claim to Quiet Title

### 1. Legal Standard for Establishing a Claim to Quiet Title

"The principal issue in a suit to quiet title is as to the existence of a cloud that equity will remove." *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied) (quoting *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.). "A cloud on title exists when an outstanding claim or encumbrance is shown, which on its face, if valid, would affect or impair the title of the owner of the property." *Angell v. Bailey*, 225 S.W.3d 834, 838 n.6 (Tex. App.—El Paso 2007, no pet.). "Any deed, contract, judgment or other instrument not void on its face that purports to convey an interest in or make any charge upon the land of a true owner, the invalidity of which would require proof, is a cloud upon the legal title of the owner." *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (quoting *Johnson v. Williams*, No. 01–05–00445–CV, 2006 WL 1653656, at *4 (Tex. App.—Houston [1st Dist.] June 15, 2006, pet. denied) (mem. op.)).

"The effect of a suit to quiet title is to declare invalid or ineffective the defendant's claim to title." *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.). "In other words, the purpose of a suit to quiet title is to invalidate the defendant's claim to title." *Ellis v. Buentello*, No. 01-12-00098-CV, 2012 WL 3528009, at *3 (Tex. App.—Houston [1st Dist.] Aug. 16, 2012, no pet.) (mem. op.). Nonetheless, the plaintiff still "has the burden of supplying the proof necessary to establish his superior equity and right to relief." *Hahn*, 321 S.W.3d at 531.[3]

---

[3] It appears that there is some discord among Texas appellate courts as to whether an action to quiet title relies on the invalidity of the defendant's claim to the property or whether the action relies on the superiority of the plaintiff's claim to the property. *Compare Ellis*, 2012 WL 3528009 at *3 ("A suit to quiet title—also known as a suit to remove cloud from title—relies on the invalidity of the defendant's claim to the property."), *with Washmon v.*

To prevail on a claim to quiet title, a plaintiff must establish that the defendant: (1) created a hindrance to the plaintiff's title, having the appearance of a better right to title than his own, that (2) appears to be valid on its face, and that (3) for reasons not apparent on its face, is not valid. *Ellis*, 2012 WL 3528009, at * 3.

Here, Plaintiffs' original petition states that Plaintiffs executed a deed of trust and promissory note to acquire the property. Mortgagors who execute a note secured by a deed of trust retain legal title to the property.[4] Defendant claims a right to foreclose on the property pursuant to the deed of trust. This alleged right to foreclose constitutes a "cloud" because it affects Plaintiffs' legal title to the property.[5] Plaintiffs' case is based on the allegation that Defendant's claimed right to foreclose on the property is invalid because it is "illegitimate and fraudulent."[6] Thus, Plaintiffs' attempt to prevent Defendant from foreclosing satisfies the elements of a claim to quiet title.

However, although Plaintiffs' allegations satisfy the elements of a claim to quiet title, Defendant nonetheless argues that Plaintiffs' quiet title claim fails because it is premised on arguments that fail as a matter of law.

---

*Strickland*, No. 03-08-00372-CV, 2010 WL 670112, at *1 (Tex. App.—Austin Feb. 26, 2010, no pet.) ("In a suit to quiet title, a plaintiff must establish superior title, proving and recovering on the strength of his own title, not the weakness of the defendant's title."). However, the disharmony makes little practical difference because Texas courts do seem to agree that a plaintiff must both establish title to property and invalidate the defendant's claim to title in order to prevail on a claim to quiet title.

[4] "When a mortgagor executes a deed of trust the legal and equitable estates in the property are severed. The mortgagor retains the legal title and the mortgagee holds the equitable title. Texas has always followed this lien theory of mortgages." *Green v. McKay*, 376 S.W.3d 891, 899 n.9 (Tex. App.—Dallas 2012, pet. filed) (quoting *Flag–Redfern Oil v. Humble Exploration Co.*, 744 S.W.2d 6, 8 (Tex. 1987)).

[5] *See Lighthouse Church of Cloverleaf v. Tex. Bank*, 889 S.W.2d 595, 603 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (stating that "[f]oreclosure transfers title from the debtor to another party").

[6] Pet. ¶ 15.

**a. Whether Defendant has Authority to Foreclose on Plaintiffs' Property**

*i. Texas Law Governing Non-Judicial Foreclosure*

Chapter 51 of the Texas Property Code governs the procedure for conducting a non-judicial foreclosure sale and authorizes either a mortgagee, or a mortgage servicer acting on behalf of a mortgagee, to sell real property "under a power of sale conferred by a deed of trust." *See* TEX. PROP. CODE. §§ 51.002, 51.0025; *see also* 15 MIKE BAGGETT, TEXAS PRACTICE SERIES: FORECLOSE LAW AND PRACTICE § 2.02 (2d ed. 2001). The Property Code defines a "mortgagee" as "(A) the grantee, beneficiary, owner, or holder of a security instrument; (B) a book entry system;[7] or (C) if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record." TEX. PROP. CODE § 51.0001(4). The statute makes no reference to a requirement that the mortgagee produce the original promissory note and, consequently, under Texas law production of the original note is not a prerequisite to administering a deed of trust foreclosure. *See, e.g.*, *Bierwirth v. BAC Home Loans Servicing, L.P.*, No. 03-11-00644-CV, 2012 WL 3793190, at *3-5 (Tex. App.—Austin Aug. 30, 2012, no pet. h.) (mem. op.); *Hornbuckle v. Countrywide Home Loans, Inc.*, No. 02-09-00330-CV, 2011 WL 1901975, at *3 (Tex. App.—Fort Worth May 19, 2011, no pet.) (mem. op.) (per curiam); *Crear v. JP Morgan Chase Bank N.A.*, No. 10-10875, 2011 WL 1129574, at *1 n.1 (5th Cir. March 28, 2011) (per curiam). However, while production of the original note is not required, the mortgagee must still establish that it has authority to act on behalf of the current holder or owner of the note. *See Millet v. JP Morgan Chase, N.A.*, No. SA-11-CV-1031-XR, 2012 WL 1029497, at *3 (W.D. Tex. March 26, 2012).

---

[7] A book entry system is defined as "a national book entry system for registering a beneficial interest in a security instrument that acts as a nominee for the grantee, beneficiary, owner, or holder of the security instrument and its successors and assigns." TEX. PROP. CODE § 51.0001(1).

7

*ii. Whether Defendant Has Authority to Foreclose on Plaintiffs' Property Pursuant to the Faces of the Documents Central to Plaintiffs' Claims*

The documents central to Plaintiffs' claims show that Defendant is both a mortgagee under the Texas Property Code and is authorized to act on behalf of the lender.

The deed of trust states as follows:

> The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns) . . . .
>
> . . . .
>
> . . . Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.[8]

Texas courts have held that provisions in a deed of trust providing for the use of MERS are enforceable to the extent of the terms set forth in the document. *Bierwirth*, 2012 WL 3793190, at *5; *Campbell v. Mortg. Elec. Registration Sys., Inc.*, 03–11–00429–CV, 2012 WL 1839357, at *5 (Tex. App.—Austin May 18, 2012, pet. denied) (mem. op.). Thus, pursuant to the express language of the deed of trust, MERS had authority to act on behalf of the lender and the lender's successors and assigns. MERS transferred that authority to Defendant by executing an assignment. The assignment provided:

> FOR VALUE RECEIVED, receipt of which is acknowledged, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR HOMETRUST MORTGAGE COMPANY, ITS SUCCESSORS AND ASSIGNS . . . mortgagee of record of that one certain loan agreement evidenced by a promissory note and security instrument or deed of trust dated 11/14/2007 (the "Loan Agreement"), and recorded on 11/16/2007 in the amount of $162,450.00 . . . GRANTS, ASSIGNS, AND TRANSFERS all rights accrued and to accrue under

---

[8] *See* Doc. No. 3-3.

said Loan Agreement to JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO CHASE HOME FINANCE LLC . . . .[9]

The assignment was signed by "Kerry J. Clay Assistant Secretary" on behalf of "MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR HOMETRUST MORTGAGE COMPANY, ITS SUCCESSORS AND ASSIGNS." The document was also notarized. Because the assignment conveyed all of MERS's interest in the loan agreement directly to Defendant, Defendant obtained authorization to act on behalf of the lender and the lender's successors. Additionally, once the assignment was recorded, Defendant became a "mortgagee" under the Texas Property Code. *See* TEX. PROP. CODE 51.0001(4)(C) (defining a mortgagee as "the last person to whom the security interest has been assigned of record").[10] Accordingly, the face of the documents central to Plaintiffs' claims show that Defendant is authorized to administer a deed of trust foreclosure.

### *iii. Plaintiffs' Argument That Defendant is Not Authorized to Foreclose Despite the Faces of the Documents Central to Plaintiffs' Claims*

Despite the faces of the documents, Plaintiffs argue that Defendant is not authorized to foreclose for several reasons.

One of Plaintiffs' arguments concerns MERS's ability to transfer the note. Plaintiffs argue that "MERS did not have the capacity to assign any financial interest in [the] note because MERS has universally testified in lawsuits around the country that it possesses no financial interest in promissory note."[11] Plaintiffs also argue that "[s]ince MERS, as a 'nominee', does not own the actual loan, attempting to transfer both the security instrument and negotiable interest in tandem violates a long line of precedents that bar the separation of the note from the deed of

---

[9] *See* Doc. No. 3-4.
[10] Plaintiffs have not alleged that there have been any subsequent assignments of the deed of trust.
[11] Pet. ¶ 6.

9

trust."[12] However, in this case, it is irrelevant whether MERS had the authority to negotiate or assign the note to Defendant. MERS only needed to assign its authority to act on behalf of the lender or the lender's successors.

Plaintiffs also argue that the deed of trust has become a "nullity" because the note and deed were split in the securitization process.[13] Plaintiffs contend that "as part of the MERS process, promissory notes are split from the counterpart security interest, as it is a necessary step in the securitization process. The instruments at issue in this case are a fraudulent attempt to reattach the security interest and negotiable instrument."[14] However, Plaintiffs' argument has no basis in Texas law. Texas courts have found that MERS may validly assign its rights and interests in a deed of trust without invalidating the security instrument. *See Bierwirth*, 2012 WL 3793190, at *5 (holding that "[w]hen MERS executed the assignment to BAC, BAC obtained all of MERS's rights and interests in the deed of trust (originating from the Lender, Countrywide)"); *Campbell*, 2012 WL 1839357, at *5 ("When MERS transferred the deed of trust to Wells Fargo, Wells Fargo obtained all MERS's rights and interests in the deed of trust, including the power to foreclose on the property."). In support of their argument, Plaintiffs cite *McCarthy v. Bank of America, NA*, No. 4:11–CV–356–A, 2011 WL 6754064 (N.D. Tex. Dec. 22, 2011), contending that the opinion "acknowledges and articulates the limited capacity of MERS."[15] However, *McCarthy* is of no avail to Plaintiffs in this case. The court in *McCarthy* did not hold that a deed of trust becomes null and void upon a transfer by MERS. To the contrary, the court explicitly held that MERS could assign its interest in the deed of trust to another entity, thereby making the entity the "holder" of the security instrument and thus a mortgagee under the Texas Property

---

[12] Pet. ¶ 7.
[13] Pet. ¶ 7.
[14] Pet. ¶ 7.
[15] Pet. ¶ 7.

Code. *Id.* at *4. While it is true that the court in *McCarthy* found that a deed of trust serves no purpose and is impotent if the holder or owner of the deed of trust does not also hold the note, the court recognized the possibility that the owner or holder of a note could arrange for an agent or nominee, acting on its behalf, to conduct a foreclosure for the benefit of the owner or holder of the note. *Id.* at *3. Here, the documents central to Plaintiffs' claims show that Defendant has that authority: the deed of trust granted MERS the authority to act on behalf of the lender and the lender's successors, and MERS transferred the authority to Defendant via the assignment.

Plaintiffs also argue that the assignment by MERS was "fraudulent and void" for several reasons.[16] Plaintiffs argue that the statement "FOR VALUE RECEIVED" on the assignment is "outright fraud in that MERS does not, and cannot, receive any valuable consideration for the assignment of its nominal rights."[17] Plaintiffs also argue that "[d]iscovery will establish that Kerry J. Clay had neither capacity nor authority by the MERS Board of Directors to assign anything in this case, thereby rendering the assignment as void."[18] In some cases, if an assignment of the deed of trust were actually fraudulent and void, the borrower could be exposed to the risk of double liability because the lender may not be bound by the assignment and therefore, theoretically, could attempt to collect on the note despite foreclosure, contending that the foreclosure had not discharged the debt. Here, however, there is no plausible threat of double liability. Defendant has produced a copy of the note, which has been indorsed[19] to Defendant from the original Lender Hometrust Mortgage Company.[20] Because the note is indorsed to

---

[16] Pet. ¶ 10.
[17] Pet. ¶ 6.
[18] Pet. ¶ 6.
[19] Because the term is being used in the context of negotiable instruments, the Court will use the spelling "indorse" rather than "endorse." *See* BRYAN A. GARNER, GARNER'S DICTIONARY OF LEGAL USAGE 316 (3d ed. 2011) ("In legal senses relating to negotiable instruments, *indorse* predominates in the U.S., and the word is so spelled throughout the Uniform Commercial Code.").
[20] *See* Doc. No. 3-2. The note is indorsed to "JPMorgan Chase Bank, N.A. without recourse." The indorsement is signed by "Patricia A. Gustalson Sr. Vice President" on behalf of Hometrust Mortgage Company.

Defendant from the original lender, the document suggests that Defendant is entitled to enforce the note, therefore precluding the risk of double liability. Plaintiffs have not alleged that the note or indorsement is forged. Nor have Plaintiffs alleged that Defendant is not in possession of the original note. Thus, even if the assignment of the deed of trust were void, the factual allegations in the petition and the documents central to Plaintiffs' claims do not allow the Court to draw the reasonable inference that Plaintiffs could plausibly be exposed to the risk of double liability or that Defendant's attempt to foreclose could plausibly constitute a cloud on Plaintiffs' title to the property. Therefore, Plaintiffs' argument that the assignment was void cannot support Plaintiffs' claim to quiet title.

Plaintiffs further argue that "through the securitization process, their note was fully discharged and ceased to exist in the form of a negotiable instrument."[21] Plaintiffs contend that "by way of the securitization process, the note has been paid off in its entirety many times over."[22] Plaintiffs' allegations are both cursory and conclusory. Plaintiffs do not allege any facts explaining why or how the note was paid off: for example, Plaintiffs have not alleged that they paid off the note themselves, they do not allege that any specific entity or investor discharged the debt or paid off the note on their behalves, and they do not allege facts indicating by what process significant funds could have been credited on their behalves. Without any factual allegations supporting their argument, the Court cannot accept Plaintiffs' conclusions that the note was "fully discharged" and "paid off in its entirety many times over" as bases for finding that relief can plausibly be granted on Plaintiffs' claim to quiet title.[23]

---

[21] Pet. ¶ 7.
[22] Pet. ¶ 8.
[23] *See Iqbal*, 556 U.S. at 678 (holding that a court is "not bound to accept as true a legal conclusion couched as a factual allegation").

Accordingly, having found that none of Plaintiffs' arguments or factual allegations controvert Defendant's authority to foreclose pursuant to the faces of the documents central to Plaintiffs' claims, the Court finds that Plaintiffs' claim to quiet title fails as a matter of law. Defendant's motion to dismiss Plaintiffs' claim to quiet title is therefore granted.

### B. Business and Commerce Code Violation

Plaintiffs allege that Defendant violated the Texas Business and Commerce Code because Defendant is "not acting on behalf of the holder of Plaintiffs' note," reasserting their arguments that Defendant "never legitimately acquired or owned Plaintiffs' loan because the assignment by MERS was fraudulent and void and that "through the securitization process, the note was fully discharged and ceased to exist in the form of a negotiable instrument."[24] Rather than constituting a separate cause of action, the Court finds that Plaintiffs' allegations under the Business and Commerce Code are simply offered in connection with their argument that Defendant is not properly authorized to foreclose on behalf of the holder of Plaintiffs' note. The Court has addressed Plaintiffs' arguments above in the context of Plaintiffs' claim to quiet title.

### C. Civil Practice and Remedies Code Violation

Plaintiffs allege that Defendant's "actions, in accelerating Plaintiffs' deed of trust, appointing of a substitute trustee, filing a notice of substitute trustee's sale, delivery notice of substitute trustee's sale to both Plaintiffs, and attempting to foreclose all constitute violations of Section 12.002."[25] Defendant contends that Plaintiffs have failed to state a claim for relief under the Civil Practice and Remedies Code because their claim is "based on the false premise that the Deed of Trust is a fraudulent lien."[26]

Section 12.002(a) of the Civil Practice and Remedies Code provides:

---

[24] Pet. ¶ 10.
[25] Pet. ¶ 12.
[26] Mot. Dismiss ¶ 10.

 (a) A person may not make, present, or use a document or other record with:

  (1) knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;

  (2) intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and

  (3) intent to cause another person to suffer:

   (A) physical injury;

   (B) financial injury; or

   (C) mental anguish or emotional distress.

TEX. CIV. PRAC. & REM CODE § 12.002(a). "The party asserting a claim under section 12.002 has the burden to prove the requisite elements of the statute." *Aland v. Martin*, 271 S.W.3d 424, 430 (Tex. App.—Dallas 2008, no pet.). "One of the essential elements of a Section 12.002 claim is that the defendant used a document or record despite knowing that it reflected a fraudulent lien or claim against real property." *Salomon v. Lesay*, 369 S.W.3d 540, 549 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

 Plaintiffs have not alleged facts suggesting that Defendant had knowledge of any fraudulent document or lien. Because Plaintiffs have failed to plead one of the essential elements of a section 12.002 claim, Plaintiffs' claim to relief under the Civil Practice and Remedies Code is insufficient to survive a motion to dismiss. Defendant's motion to dismiss Plaintiffs' claim under the Civil Practice and Remedies Code is therefore granted.

**D. Texas Finance Code Violation**

Plaintiffs allege that Defendant violated sections 392.303[27] and 392.304[28] of the Texas Finance Code, which codify portions of the Texas Debt Collection Act ("TDCA"), because Defendant "had no authority to collect on the note, yet engaged in actions to collect on the note."[29] Defendant argues that Plaintiffs have failed to state a claim under the Finance Code because Plaintiffs have failed to allege that Defendant is a debt collector under the TDCA and that Defendant has committed a wrongful act under the TDCA. Defendant also argues that Plaintiffs' claim under the TDCA fails as a matter of law because Plaintiffs' allegations are premised on the incorrect legal argument that Defendant must be the holder of the note to enforce the deed of trust.

The Court finds that Plaintiffs have failed to state a claim under the TDCA because they have not provided any detail whatsoever concerning the specific acts that allegedly violated the TDCA. Nor do Plaintiffs point to a specific provision of the Finance Code that was allegedly violated.[30] Without any specific allegations, the Court cannot find that Plaintiffs have alleged a plausible claim to relief.[31] Defendant's motion to dismiss Plaintiffs' claim under the TDCA is therefore granted.

---

[27] Section 392.303 prohibits a debt collector from using certain unfair or unconscionable means in debt collection.
[28] Section 392.304 prohibits a debt collector from using certain fraudulent, deceptive, or misleading representations in debt collection or obtaining information concerning a consumer.
[29] Pet. ¶ 13.
[30] While Plaintiffs point to sections 392.303 and 392.304 of the Finance Code, these sections are broad and prohibit many different types of conduct. For example, section 392.304(a) includes nineteen provisions that all concern different practices.
[31] While Defendant argues that it is not a debt collector under the TDCA, Defendant did not provide any explanation or cite any authority in support of its argument, and Plaintiffs did not even address the issue in their response to the motion to dismiss. Absent briefing on the issue from the parties, the Court declines to rule on the issue at this time.

**E. Misrepresentation/Fraud**

Plaintiffs allege that Defendant represented that it was the true holder of Plaintiffs' note and deed of trust when Defendant knew, or should have known, that the assignment was void. Plaintiffs further allege:

> Since the date of the purported assignment, Defendant Chase has made advisements to Plaintiffs regarding loan modification and other mortgage relief. Defendant Chase has further made advisements to Plaintiffs regarding their payment obligations. These representations were made with the intent that Plaintiffs rely on them; Plaintiffs have relied on the representations; and acted to their financial detriment.[32]

Defendant argues that Plaintiffs' claim for fraud should be dismissed because it is based on flawed legal arguments and fails to meet the pleading standard of Rule 9(b).

In Texas, the elements of common law fraud are:

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) (quoting *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam)). "Failing to disclose information is equivalent to a false representation only when particular circumstances impose a duty on a party to speak, and the party deliberately remains silent." *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 678 (Tex. 2009).

"State law fraud claims are subject to the heightened pleading requirements of Rule 9(b)." *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550-51 (5th Cir. 2010). "To plead fraud adequately, the plaintiff must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were

---

[32] Pet. ¶ 14.

16

fraudulent.'" *Id.* at 551 (quoting *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) (quoting *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)).

Here, Plaintiffs have failed to allege a "representation" with sufficient particularly to satisfy Rule 9(b)'s heightened pleading standard. Plaintiffs do not indicate how or when Defendant made "advisements" to Plaintiffs regarding their loan or payment obligations, nor do Plaintiffs allege how or when Defendant represented that it was the true holder of the note. Plaintiffs also do not indicate what agents made the advisements or representations. Even if Plaintiffs had met Rule 9(b)'s heightened pleading standard, their claim for fraud would still fail to state a plausible claim to relief because it is premised on arguments that, as described above, fail as a matter of law. Accordingly, the Court finds that Plaintiffs have failed to plead a sufficient claim for fraud. Defendant's motion to dismiss Plaintiffs' claim for fraud is therefore granted.

**F. Accounting**

Plaintiffs request an order for an accounting of all transactions on the mortgage loan. Plaintiffs allege that an accounting is necessary "in order to determine whether the payment obligation on the original note has in fact been satisfied" and "to determine which entity (or investor), if any, is the legitimate holder of Plaintiffs' loan."[33] Defendant argues that an accounting is an equitable remedy that cannot stand as an independent claim, therefore concluding that Plaintiffs are not entitled to an accounting because they have failed to state an independent claim to relief.

---

[33] Pet. ¶ 17.

Consistent with Defendant's argument, some federal district courts have found that an accounting is merely a remedy, not an independent cause of action. *See Barcenas v. Fed. Home Loan Mortg. Corp.*, No. H-12-2466, 2013 WL 286250, at *9 (S.D. Tex. Jan. 24, 2013) ("The Court concludes that accounting is a remedy, not a cause of action, and cannot stand as an independent claim."); *Rhodes v. Wells Fargo Bank, N.A.*, No. 3:10-CV-02347-L, 2012 WL 5363424, at *35 (N.D. Tex. Oct. 31, 2012) ("Plaintiffs' request for an accounting is likewise equitable in nature and does not constitute an independent cause of action."); *Henry v. CitiMortgage, Inc.*, No. 4:11-CV-83, 2011 WL 2261166, at *8 (E.D. Tex. May 10, 2011) ("[A]n accounting is an equitable remedy and not an independent cause of action."), *report and recommendation adopted*, 2011 WL 2214007 (E.D. Tex. June 7, 2011).[34] At least some Texas appellate courts, on the other hand, have found that "[a]n action for accounting may be a suit in equity, or it may be a particular remedy sought in conjunction with another cause of action." *Michael v. Dyke*, 41 S.W.3d 746, 754 (Tex. App.—Corpus Christi 2001, no pet.), *abrogated on other grounds by Binur v. Jacobo*, 135 S.W.3d 646 (Tex. 2004); *see also T.F.W. Mgmt., Inc. v. Westwood Shores Prop. Owners Ass'n*, 79 S.W.3d 712, 717 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) ("A suit for an accounting is generally founded in equity."). "To be entitled to an accounting, a plaintiff usually must have a contractual or fiduciary relationship with the party from which the plaintiff seeks the accounting." *T.F.W. Mgmt., Inc.*, 79 S.W.3d at 717. "An equitable accounting is proper when the facts and accounts presented are so complex that adequate relief may not be obtained at law." *Hutchings v. Chevron U.S.A., Inc.*, 862 S.W.2d 752, 762 (Tex. App.—El Paso 1993, writ denied). Nonetheless, when a party can obtain adequate relief "through the use of standard discovery procedures, such as requests for production and interrogatories, a trial court does not err in not ordering an accounting." *T.F.W. Mgmt., Inc.*, 79

---

[34] These courts, however, cite no Texas case law or statute.

S.W.3d at 717-718. "An equitable accounting is within the sound discretion of the trial court." *Sw. Livestock & Trucking Co. v. Dooley*, 884 S.W.2d 805, 810 (Tex. App.—San Antonio 1994, writ denied).

Here, it is unclear whether Plaintiffs' request for an accounting constitutes a request for a specific form of relief or whether it is an assertion of an independent cause of action. However, based on the pleadings and the documents central to Plaintiffs' claims, the distinction is irrelevant. If construed as a request for a particular form of relief, Plaintiffs' request for an accounting must be dismissed because none of Plaintiffs' causes of action have survived Defendant's motion to dismiss, and thus the request for relief is not supported by a live cause of action. If construed as an assertion of an independent cause of action, Plaintiffs' request for an accounting must be dismissed for failure to state a claim because, as described above, Plaintiffs' conclusory allegations regarding satisfaction of the note are not sufficient to support a finding that Plaintiffs have stated a plausible claim to relief. To the extent that Plaintiffs request an accounting "to determine which entity (or investor) . . . is the legitimate holder of Plaintiffs' loan," the Court finds that Plaintiffs are simply reasserting their argument that Defendant needs to establish itself as the holder of Plaintiffs' note in order to foreclose on their property. The Court has considered and disposed of Plaintiffs' argument above. As a result, Defendant's motion to dismiss Plaintiffs' request for an accounting is granted.

## IV.

### Conclusion

In light of the foregoing analysis, the Court finds that Plaintiffs have failed to state a claim to relief that is plausible on its face. Accordingly, Defendant's motion to dismiss (Doc. No. 3) is GRANTED. Plaintiffs' claims are therefore DISMISSED.

The Clerk is directed to enter judgment that Plaintiffs take nothing on their claims. Defendant is awarded its costs of court and must file a Bill of Costs in the form required by the Clerk of Court within fourteen days of the judgment.

It is so ORDERED.

SIGNED this 12th day of February, 2013.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE